IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Case Number 11-30951-5-mcr |
| MUHASEN I. DEB A/K/A MIKE DEB, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____) | |
| CRICKET COMMUNICATIONS, INC., ) | Adversary No. 11-50110-5 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MUHASEN I. DEB, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Cricket Communications, Inc. ("Plaintiff" or "Cricket") by and through its undersigned counsel, Relin, Goldstein & Crane, LLP and Reed Smith LLP, hereby files this Reply Brief ("Reply") in Further Support of Plaintiff Cricket Communication Inc.'s Motion for Summary Judgment (the "Motion")[1] and in support thereof states as follows:

### I.  PRELIMINARY STATEMENT

Muhasen I. Deb a/k/a Mike Deb ("Debtor" or "Defendant") fails to demonstrate the existence of a genuine issue of material fact or legal basis sufficient to preclude entry of summary judgment in favor of Plaintiff. Defendant argues that the factual findings and conclusions of law, which were made by the Tennessee Court after a plenary evidentiary hearing, should not be accorded any preclusive effect as to the Defendant in the instant litigation. Such

---

[1] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Motion.

argument must fail for two reasons: (1) the Debtor personally had a full and fair opportunity and sufficient incentive, to litigate the merits of the Contempt Motion before the Tennessee Court in the prior litigation; and (2) during the prior litigation, the Debtor was in privity with TTYD and Sam Deb, each of whom participated in, and was represented by counsel in connection with, the Contempt Hearing.

## II. LEGAL ARGUMENT

### A. No Genuine Issues Of Material Fact Exist

As an initial matter, there is no dispute that the events leading to the entry of the Contempt Order and Fee Order (including the filing of the Tennessee Complaint, the issuance of the TRO and Preliminary Injunction, the occurrence of the Contempt Hearing, the issuance of the Contempt Report and Recommendations and Contempt Order, the filing of the Fee Motion, the issuance of the Fee Report and Recommendations, and the entry of the Fee Order) in fact occurred. Further, there is no dispute as to the authenticity or completeness of the documents attached to the Motion papers, including the transcript from the Contempt Hearing[2] and various documents filed in, or entered by, the Tennessee Court. Accordingly, as Defendant implicitly acknowledges in paragraph 4 of Defendant's Statement of Material Facts in Issue ("Defendant's Statement of Facts"), there is no dispute as to the truth of the facts on which Plaintiff seeks to rely in support of the Motion. It is also undisputed that the Debtor is jointly and severally liable for the Fee Award. Therefore, the only dispute involving facts here at issue concerns the

---

[2] Defendant's admissions (including those comprising his sworn testimony during the Contempt Hearing) independently prove that he deliberately and intentionally violated the Preliminary Injunction resulting in harm to Plaintiff. This, in and of itself, is sufficient to render the Fee Award non-dischargeable pursuant to 11 U.S.C. 523(a)(6).

applicability (not the veracity) of such facts to the present action – an issue that is capable of being determined as a matter of law.

### B. Defendant Had Sufficient Incentive And Opportunity To Litigate His Personal Violation Of The Preliminary Injunction At The Contempt Hearing

Collateral estoppel "protect[s] against 'the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions' while precluding parties from bringing claims they have already had a full and fair opportunity to litigate." Hallock v. United States, No. 6:09-cv-1141, 2010 U.S. Dist. LEXIS 109278, *19 (N.D.N.Y Jul. 28, 2010) (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)). The parties agree that collateral estoppel precludes relitigation of issues that have been previously adjudicated if the following four criteria are satisfied: "(1) the identical issue was raised in the previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." (See Motion p. 10; Response p. 3.) Defendant argues, however, that the Plaintiff has failed to satisfy each of the elements necessary for collateral estoppel to apply. As previously articulated in Plaintiff's opening brief filed in support of the Motion, the identical issue was actually litigated, decided and necessary to the decision in the prior proceeding. (See Motion pp. 10-12.) Thus, the only remaining argument made by the Defendant is that he did not have a full and fair opportunity to litigate the Contempt Motion because he was not a named defendant in the Tennessee Complaint. The facts compel a contrary conclusion.

### 1.   Defendant Personally Litigated The Claims Asserting His Violation Of The Preliminary Injunction During The Contempt Hearing

The Tennessee Court implicitly determined that the Debtor had a full and fair opportunity to litigate the issues in the prior action (including his personal violation of the Preliminary Injunction) when it included the Debtor among the parties against whom the Contempt Order was entered and when it added the Debtor as a defendant in the prior litigation. Defendant now seeks to make an end-run around his deliberate and intentional violation of a court order entered to protect, and which resulted in harm to, Cricket by claiming he did not have a full and fair opportunity to litigate certain issues at the Contempt Hearing. The undisputed facts, including Defendant's testimony from the Contempt Hearing, belie Defendant's argument because such facts indisputably prove that the Defendant had notice of the Preliminary Injunction, knew and understood that such Preliminary Injunction applied to him, was present throughout the entirety of the Contempt Hearing.

As an initial matter Defendant's own testimony directly contradicts his suggestion that he was not "a party to" the TRO or Preliminary Injunction. (Def's Stmt. Of Mat. Facts ¶¶ 8-9.) The TRO and Preliminary Injunction specifically include "employees" of TTYD, and Defendant unequivocally admits that he was an employee of TTYD. (See Shur Aff. Ex. D (Contempt Hrg. Tr. 117:3-9; 118:25-119:5).) The Debtor also was aware, and had an understanding, of the TRO and Preliminary Injunction prior to appearing for, testifying at, and otherwise participating in the Contempt Hearing. Defendant testified that he learned of the TRO "on the day that it happened" from Mr. Sam Deb and "was emailed a copy from our attorney." (See Shur Aff. Ex. D (Contempt Hrg. Tr. 117:10-118:6).) Defendant's testimony further proves that he received (and understood) the contents of the Preliminary Injunction (See generally Shur Aff. Ex. D (Contempt Hrg Tr.); see also Shur Aff. Ex. D (Contempt Hrg. Tr. 128:11-18 (describing the scope of the

injunction, noting applicability of the injunction to "us" and referring to counsel as "our attorneys")).)[3] Accordingly, there can be no question that the TRO and Preliminary Injunction did apply to the Debtor personally and that the Debtor understood that he was enjoined from taking certain action as a result of the Preliminary Injunction.

Moreover, while the Debtor may not have been an owner or officer of TTYD, his actions suggest greater involvement in TTYD's business than that of other employees. By way of example, the Debtor was not a named party to the Premier Dealer Agreement, which underlies the issues in the prior litigation; however, the Debtor admitted that he did sign (whether authorizedly or not) such agreement on behalf of TTYD, in the presence of a Cricket employee, and believed that he had the authority to bind TTYD in connection with such contract. (See Shur Aff. Ex. D (Contempt Hrg. Tr. 126:5-127:9).) The Debtor also participated in communications with counsel regarding TTYD's business. The Debtor admitted that he received correspondence from counsel regarding TTYD and had received communications from counsel regarding the scope of the preliminary injunction. (See Shur Aff. Ex. D (Contempt Hrg. Tr. 117:10-18 (describing receipt of TRO by email from "our attorney"); 128:11-18 (describing communications with counsel regarding the scope of the Preliminary Injunction).) The Debtor also attended meetings with counsel for TTYD concerning the formation of a successor to TTYD (Jabar Jaw) and the transfer of TTYD's assets to Jabar Jaw. (See Shur Aff. Ex. D (Contempt Hrg. Tr. 426:4-25 (testimony by Edwina C. Schleider, Esq. describing Debtor's attendance at meetings with counsel and Mr. Sam Deb regarding the transfer of assets from TTYD to Jabar

---

[3] Portions of the Debtor's testimony at the Contempt Hearing were comprised of excerpts from video taped depositions taken in connection with the litigation of the Contempt Motion, which occurred after the entry of the Preliminary Injunction but before the Contempt Hearing.

Jaw and communications among counsel and Mike Deb regarding transfer of assets from TTYD to Jabar Jaw and formation of Jabar Jaw).)

The Debtor's heightened involvement in TTYD is further evidenced by his participation in the Contempt Hearing as the corporate representative of TTYD. Unlike another TTYD employee witness who was sequestered during the testimony of other witnesses, the Debtor was permitted to remain in the courtroom for the duration of the hearing. (See Shur Aff. Ex. D (Contempt Hrg. Tr. 10:8-11:15 (applying the Rule and excusing Ms. Shrook, but not the Debtor from the proceedings) and 254:6-9 (containing Shrook's testimony regarding her employment by TTYD)).) Over the objection of Cricket's counsel, TTYD's counsel argued that the Defendant, as the corporate designee of TTYD, should be permitted to remain in the courtroom for the duration of the trial. (See Shur Aff. Ex. D (Contempt Hrg. Tr. 10:11-15).) The Defendant remained present for and participated in the entirety of the Contempt Hearing. (See Pl. Stmt of Facts ¶ 22.) Finally, the familial relationship between the Debtor and the principal of TTYD, Mr. Sam Deb (as brothers), further suggests that something more than a traditional employer-employee relationship existed between the Debtor and TTYD.

The Debtor's actions and involvement in TTYD, including his extensive participation at the Contempt Hearing, were sufficient to compel the Tennessee Court to enter the Contempt Order against the Debtor personally, (see Contempt Order), and to *sua sponte* enter an Order effecting the inclusion of the Debtor as a defendant on the docket in the Tennessee litigation (see October 5, 2009 Order by Judge Joe B. Brown, a true and correct copy of which is attached hereto as **Exhibit A**). The Debtor conceded the correctness of the Tennessee Court's determinations when he scheduled the Fee Award as an *undisputed* claim on his bankruptcy schedules. (See Shur Aff. Ex. I (Schedule of Unsecured Claims).)

### 2.  Defendant Was In Privity With Defendants In The Prior Litigation

Even assuming, *arguendo*, this Court were to conclude that the Debtor did not litigate the violation of the Preliminary Injunction on behalf of himself as an individual (which he did), reference to traditional principals of collateral estoppel confirms that the Debtor had a full and fair opportunity to litigate the issues at the Contempt Hearing because he was in privity with TTYD and Sam Deb. The application of collateral estoppel does not require mutuality of parties. While collateral estoppel *generally* does not apply to those who were not parties to the prior litigation, there exists a well settled exception to the general rule when a nonparty is in privity with a party in the prior action. Taylor v. Sturgell, 128 S.Ct. 2161, 2173-74 (2008). When evaluating whether parties are in privity, the Supreme Court has identified six factors which will place a non- party within the exception to the general rule:

> 1) the nonparty agrees to be bound by the determination of issues in an action between others;
> 2) a substantive legal relationship-i.e. traditional privity-exists that binds the nonparty;
> 3) the nonparty was "adequately represented by someone with the same interests who [wa]s a party";
> 4) the nonparty assumes control over the litigation in which the judgment is rendered;
> 5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and,
> 6) the nonparty falls under a special statutory scheme that "expressly foreclos[es] successive litigation by nonlitigants."

Taylor v. Sturgell, 128 S.Ct. 2161, 2173-74 (2008). Courts in the Second Circuit have noted that while it is not determinative, the existence of a familial relationship is a factor to be considered in evaluating whether privity should attach. Ferris v. Cuevas, 118 F.3d 122, 128 (2d Cir. N.Y. 1997) (citations omitted).

The Debtor was adequately represented by TTYD and Sam Deb in connection with the Contempt Proceeding because their interests were aligned. Although it is a person in the eyes of

the law, as a corporation, TTYD must be presumed to act through its employees (including the Debtor) and its principals or officers (including the Debtor's brother Sam Deb). Both TTYD and Sam Deb, individually and as the owner of TTYD had every incentive to (and did) litigate against a finding that the Debtor violated the Preliminary Injunction because any such violation by the Debtor, as an employee of TTYD, would be imputed to TTYD. (See generally Shur Aff. Ex. D (Contempt Hrg. Tr.).) Thus, for purposes of the Contempt Hearing, TTYD and the Debtor were one and the same. The Debtor's interests similarly were aligned with those of Mr. Sam Deb because, as the principal of TTYD, a violation of the Preliminary Injunction imputed to TTYD through its employees, would result in significant ramifications (including financial ramifications) to TTYD's principal, Mr. Sam Deb.

Additionally, as the facts described above make clear, the Debtor is in privity with TTYD by virtue of exercising control over the litigation. See supra § II(B)(1). During the hearing the Debtor was TTYD's corporate representative. TTYD and Mr. Sam Deb each were represented by separate counsel. Therefore, as the corporate designee of TTYD, the Debtor may be deemed to have assumed control over the portion of the litigation comprising the Contempt Hearing. Whether through alignment of interests, or assumption of control over the litigation, the Debtor was in privity with TTYD and Mr. Sam Deb during the prior litigation and therefore had a full and fair opportunity to litigate the issues raised therein.

Given the Defendant's knowledge of the existence of the Preliminary Injunction, understanding that the Preliminary Injunction applied to him, alignment of interests with Mr. Sam Deb and TTYD, and participation in and control over the Contempt Hearing as the corporate representative of TTYD, there is absolutely no basis to conclude that the Defendant did not have a full and fair opportunity, as well as the requisite incentive to litigate the issues

concerning his personal violation of the Preliminary Injunction at the Contempt Hearing. Accordingly, consistent with the Tennessee Court's entry of the Contempt Order against the Debtor, the undisputed facts afford sufficient evidence for this Court to conclude that the Debtor engaged in willful and malicious conduct resulting in harm to Plaintiff. See In re Behn, 242 B.R. 229 (Bankr. W.D.N.Y. 1999). Further, Plaintiff has satisfied each of the required elements for collateral estoppel to preclude relitigation of the issues to be determined in this adversary proceeding. Consequently, there is no legal basis to preclude entry of judgment in favor of Plaintiff as a matter of law.

WHEREFORE, pursuant to Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, and for the reasons fully set forth herein and in Plaintiff Cricket Communication Inc.'s Motion for Summary Judgment, Plaintiff Cricket Communications, Inc. respectfully requests that this Honorable Court enter an order (i) granting the Motion; (ii) declaring that the Debtor may not obtain a discharge of amounts owed to Cricket pursuant to the Fee Order; (iii) that the Plaintiff in this action may seek an additional money judgment in this Court for reasonable attorneys fees and costs; (iv) declaring that any such money judgment for reasonable attorneys fees and costs shall be nondischargeable; and (v) granting such other and further relief as this Court deems just and reasonable under the circumstances.

Respectfully submitted,

s/ Joseph M. Shur

---

Joseph M. Shur, Esq.
Relin, Goldstein & Crane, LLP
28 E. Main Street Ste. 1800
Rochester, NY 14614
Telephone: (585) 325-6202
Facsimile: (585) 325-6201
E-mail: jmshur@rgcattys.com

-and-

Scott M. Esterbrook, Esq.
Jennifer P. Knox, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: sesterbrook@reedsmith
         jknox@reedsmith.com

*Counsel for Cricket Communications, Inc.*

Dated: February 21, 2012