UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  MUHASEN I. DEB a/k/a
       MIKE DEB,
                Debtor.

Case No. 11-30951-5-mcr
Chapter 7

CRICKET COMMUNICATIONS, INC.,
                Plaintiff,
v.

MUHASEN I. DEB,
                Defendant.

Adv. Proc. No. 11-50110-5-mcr

APPEARANCES:

REED SMITH, LLP.
Attorneys for Plaintiff
2500 One Liberty Place
1650 Market St.
Philadelphia, PA 19103

JENNIFER P. KNOX, ESQ.
Of Counsel

RELIN, GOLDSTEIN & CRANE, LLP
Attorneys for Plaintiff
28 East Main St., Ste. 1800
Rochester, NY 14614

JOSEPH M. SHUR, ESQ.
Of Counsel

PETER C. SCHAEFER, ESQ.
Attorney for Defendant
313 E. Willow St., Suite 105
Syracuse, NY 13203

HON. MARGARET CANGILOS-RUIZ, U.S. BANKRUPTCY JUDGE

## MEMORANDUM-DECISION AND ORDER
## GRANTING SUMMARY JUDGMENT

Plaintiff Cricket Communications, Inc. ("Plaintiff") has moved for summary judgment in this action seeking declaratory relief that the debt owed by Muhasen I. Deb ("Debtor") in the amount of $215,373.73 is nondischargeable under § 523(a)(6) of the United States Bankruptcy

Code.[1] Plaintiff also seeks to recover its attorney fees and costs incurred in pursuing this action.[2] Issue was joined by the timely filing of Debtor's answer to the amended complaint.[3] Because the court finds that there is no genuine dispute as to any material fact and that Plaintiff is entitled to judgment under Code § 523(a)(6) as a matter of law, the court grants Plaintiff's summary judgment motion. This memorandum-decision sets forth the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 9021.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and §§ 157(a), 157(b)(1), and 157(b)(2)(I).

## FACTS

The basis of Plaintiff's claim is a pre-petition judgment that a Tennessee federal district court ("Federal Court") awarded Plaintiff for attorney fees and expenses incurred by Plaintiff in successfully pursuing a civil contempt action against Debtor, among other contemnors. Following is a description of the circumstances giving rise to Plaintiff's claim and the instant

---

[1] Bankruptcy Reform Act of 1978 (as amended), 11 U.S.C. §§ 101–1532 (2011) ("Bankruptcy Code" or "Code").
[2] Plaintiff's amended complaint does not set forth a specific request for attorney fees and expenses, but requests "such other and further relief as is just and proper." The summary judgment motion, however, specifically requests reasonable attorney fees and expenses. Since the award to a creditor of attorney fees incurred in pursuing an action under § 523(a)(6) is an equitable remedy, *In re Nangle*, 281 B.R. 654, 659 (B.A.P. 8th Cir. 2002), the court shall address Plaintiff's request for reasonable attorney fees and expenses in this memorandum-decision.
[3] In addition to the foregoing pleadings, the record before the court consists of the affidavit of Joseph M. Shur, Attorney for Plaintiff, sworn to on December 20, 2011, and attached exhibits ("Shur Aff."), Plaintiff's statement of material facts submitted pursuant to Local Bankruptcy Rule 7056-1 ("Plaintiff's Statement"), Plaintiff's brief in support of summary judgment ("Plaintiff's Br."), Debtor's opposing affidavit sworn to on January 20, 2012 ("Debtor's Aff."), Debtor's statement of material facts submitted pursuant to Local Bankruptcy Rule 7056-1 ("Debtor's Statement"), Debtor's brief in opposition to summary judgment ("Debtor's Br."), and Plaintiff's reply brief in further support of summary judgment.

action. The following facts are deemed undisputed pursuant to Fed. R. Civ. P. 56(e)(2) and Local Bankruptcy Rule 7056-1(c).[4]

Plaintiff is a wireless telephone carrier that provides, among other products, wireless phone and internet services. *Plaintiff's Statement* ¶ 2. Debtor was an employee of Talk Til You Drop Wireless, Inc. ("TTYD"). *Shur Aff.* Ex. D ("Transcript"), at 218. TTYD owned and operated multiple stores in the Central New York area selling wireless phone and internet services. *Plaintiff's Statement* ¶ 12. Debtor's brother, Isam Deb, was the principal and owner of TTYD. *Debtor's Statement* ¶ 5. On or about July 1, 2008, Debtor signed his brother's name, on behalf of TTYD, entering TTYD and Plaintiff into a "Premier Dealer Agreement" ("Agreement"). *Plaintiff's Statement* ¶ 37. The Agreement provided that certain TTYD stores would exclusively sell Plaintiff's products. *Plaintiff's Statement* ¶ 8. The Agreement also provided that the same TTYD stores would not compete with Plaintiff's business for the six-month period following the Agreement's termination. *Plaintiff's Statement* ¶ 14.

Sometime after Debtor signed the Agreement, TTYD began selling "Boost" products in violation of the Agreement. *Plaintiff's Statement* ¶ 10. In response, Plaintiff filed a complaint in Federal Court seeking injunctive relief from TTYD's violation. *Plaintiff's Statement* ¶ 11. As a result of TTYD's violation, Plaintiff also terminated the Agreement. *Plaintiff's Statement* ¶ 13. The Federal Court granted Plaintiff a temporary restraining order enjoining TTYD and its employees from selling or promoting any wireless telephone or internet services in violation of the Agreement. *Plaintiff's Statement* ¶¶ 15-16. Plaintiff alleges that shortly thereafter Debtor and his brother, among others, attempted to form a new entity named "Jabar Jaw Wireless, LLC" ("Jabar Jaw") through which they continued to sell wireless telephone and internet services in

---

[4] Local Bankruptcy Rule 7056-1(c) provides, in relevant part, that ". . . [t]he Court may deem admitted each material fact set forth in the statement [of undisputed facts] served by the moving party if not controverted by the statement [of disputed facts] served by the opposing party."

3

violation of the temporary restraining order. *Plaintiff's Statement* ¶ 17. The Federal Court then issued a preliminary injunction prohibiting TTYD and its employees from selling *any* wireless telephone or internet services for a six-month period within a two-mile radius of certain TTYD store locations. *Plaintiff's Statement* ¶ 18. Plaintiff alleges that after the preliminary injunction was entered, Debtor, among others, transferred many of TTYD's assets to Essa Tadrus[5] d/b/a "Chit Chat Wireless" ("CCW"). *Plaintiff's Statement* ¶ 41. Plaintiff alleges that CCW then sold wireless telephone and internet services in violation of the preliminary injunction. *Plaintiff's Statement* ¶¶ 42-44.

Plaintiff filed a civil contempt action in Federal Court based on TTYD's alleged "intentional and deliberate violations of the . . . Preliminary Injunction entered by the Court." *Plaintiff's Statement* ¶ 19; *Shur Aff.* Ex. G, at 2. The magistrate judge heard Plaintiff's civil contempt action. *Plaintiff's Statement* ¶ 20. TTYD designated Debtor as its "corporate representative," and Debtor was permitted to remain in the courtroom throughout the entire hearing. *Plaintiff's Statement* ¶ 22. At the hearing, Debtor testified that he helped run a TTYD store in Syracuse, New York, and that his responsibilities included "anything that involved the Syracuse market as far as making decisions, making orders, and so forth." *Plaintiff's Statement* ¶ 36. Debtor also testified that he signed the Agreement on behalf of TTYD. *Plaintiff's Statement* ¶ 37. Mr. Andrew Allen, Plaintiff's employee, testified that in a January 2009 meeting with Debtor, Debtor stated that he "wanted to convert some of [TTYD's] locations to standard locations so he could sell Boost [products]" in violation of the Agreement. *Plaintiff's Statement* ¶ 38. Defense counsel made the argument in open court that the Debs, in attempting to form Jabar Jaw, relied on the advice of counsel and therefore did not know their actions were illegal.

---

[5] Cricket's summary judgment motion states Mr. Tadrus' first name as "Essi," however, other documents from the record state Mr. Tadrus' first name as "Essa." For the purposes of this memorandum-decision, we will use "Essa."

4

*Transcript* at 27-29. Plaintiff also presented evidence that Debtor continuously appeared at CCW locations, Debtor possessed keys to at least one CCW store, Debtor's name remained as the contact person on CCW's commission statements, and that a CCW employee paid one of Debtor's bills with a CCW check. *Shur Aff.* Ex A., at 45; *Transcript* at 220, 226-227, 289-290.

Following the hearing, the magistrate judge issued a report and recommendation ("Contempt Report"). *Plaintiff's Statement* ¶ 23. The Contempt Report stated that Debtor "was represented by Mr. Maness" at the contempt hearing. *Shur Aff.* Ex A., at 38. The Contempt Report found that Debtor "willfully violated the preliminary injunction." *Shur Aff.* Ex A., at 39. No objections were filed against the Contempt Report. *Plaintiff's Statement* ¶ 25. The Federal Court then issued an order ("Contempt Order"), in which the district court judge adopted the findings of fact and conclusions of law contained in the Contempt Report. *Plaintiff's Statement* ¶ 26. The Contempt Order found Debtor in civil contempt and jointly and severally liable for Plaintiff's attorney fees and expenses in prosecuting the contempt action. *Shur Aff.* Ex. A, at 54. No appeal was taken from the Contempt Order. *Plaintiff's Statement* ¶ 27. Plaintiff then filed its motion for attorneys' fees. *Plaintiff's Statement* ¶ 29. Following Plaintiff's motion, the magistrate judge issued another report and recommendation ("Fee Report"). *Plaintiff's Statement* ¶ 30. The Fee Report recited that "[o]ut of an abundance of caution the Magistrate Judge had notices of the [contempt] report and recommendation and [the District Judge's] order adopting the [contempt] report and recommendation and the permanent injunction, as well as the motion for attorneys' fees, [] sent to . . . [Debtor]." *Shur Aff.* Ex. A, at 60. No objections were filed against the Fee Report. *Shur Aff.* Ex. A, at 64. The Federal Court then issued another order ("Fee Order"), in which the district court judge adopted the findings of fact and conclusions of law contained in the Fee Report. *Plaintiff's Statement* ¶ 31. The Fee Order awarded Plaintiff

$188,922.24 in attorneys' fees and $28,985.06 in expenses for a total award of $217,907.30. *Plaintiff's Statement* ¶ 32. The Fee Order made Debtor, along with the other named defendants to the contempt motion, jointly and severally liable for Plaintiff's award. *Plaintiff's Statement* ¶ 33. No appeal was taken from the Fee Order. *Plaintiff's Statement* ¶ 34.

On April 25, 2011, Debtor filed a petition in this court under chapter 7 of the Bankruptcy Code. *Plaintiff's Statement* ¶ 1. Debtor's Schedule F, listing "Creditors Holding Unsecured Non-Priority Claims," included Plaintiff as a creditor holding an undisputed unsecured claim in the amount of $217,907.30. *Plaintiff's Statement* ¶¶ 48-49. Plaintiff has collected partial payments of the award from parties other than Debtor in the amount of $2,533.57. Debtor, therefore, upon submission of the instant motion remained jointly and severally liable to Plaintiff in the amount of $215,373.73, plus interest. *Plaintiff's Br.* 13.

## STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment has been clearly articulated by the federal courts. "Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Brown v. Eli Lilly and Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks omitted) (citing Fed. R. Civ. P. 56(a)). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

6

"More specifically, [the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) and *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2). Additionally, "[t]he Court may deem admitted each material fact set forth in the statement [of undisputed facts] served by the moving party if not controverted by the statement [of disputed facts] served by the opposing party." Local Bankruptcy Rule 7056-1(c).

"Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Eli Lilly and Co.*, 654 F.3d at 358 (citing *Great Am. Ins. Co.*, 607 F.3d at 292). Furthermore, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments* § 27 (2011). Therefore, where all facts material to an underlying cause of action are conclusively determined by a prior judgment and establish that movant is entitled to judgment as a matter of law, summary judgment must be granted.

## DISCUSSION

### NONDISCHARGEABILITY UNDER § 523(a)(6)

A discharge issued under Bankruptcy Code § 727 does not include any debt determined to arise from a "willful and malicious injury by the debtor to another entity or to the property of another entity." Code § 523(a)(6). Thus, "[t]o succeed on a nondischargeability [action] under Section 523(a)(6), a creditor must satisfy two elements. First, the creditor must establish that the debtor acted *willfully* in committing the injury. Second, the creditor must establish that the debtor acted *maliciously* in committing the injury." *In re Ahktar*, 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007) (emphasis added). "In seeking an exception to discharge, the creditor bears the burden of proof by a preponderance of the evidence." *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

In the context of Code § 523, the Supreme Court in *Kawaauhau v. Geiger* stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) (emphasis provided). Additionally, the Second Circuit in *In re Stelluti* stated that the word "malicious" in (a)(6) means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996). However, violations of court orders present special circumstances for finding "willfulness" and "maliciousness" under Code § 523(a)(6). Our sister court in the Western District of New York recently addressed this issue in *In re Behn*.

In *Behn*, debtor-defendant Behn violated a federal district court's temporary restraining order. Creditor-plaintiff Buffalo Gyn Womenservices, Inc. ("Buffalo") petitioned to hold Behn in civil contempt for her violation. *In re Behn*, 242 B.R. 229, 234 (Bankr. W.D.N.Y. 1999). The

8

district court found Behn in civil contempt and held Behn liable for Buffalo's damages, costs, and attorney fees. *Id.* at 236. Behn then filed a bankruptcy petition, and Buffalo sought declaratory relief that the debt owed by Behn was nondischargeable under Code § 523(a)(6). *Id.* at 231. In determining whether Behn's intentional violation of the temporary restraining order constituted a "willful and malicious" injury under § 523(a)(6), the *Behn* court reasoned that:

> So long as the federal court with jurisdiction over the person who later files bankruptcy, has issued an order for the protection of someone else, and has communicated it clearly to the contemnor, then an intentional violation [of that court order] is not only willful, but is also "malicious" *per se*. The federal court has told the defendant the point at which lawful activity becomes "harm" under the law. To intend the violation is to intend the harm. What "cause" or "excuse" might be "just" was considered by the court in fashioning the protective order, and is not to be re-litigated when deciding whether the violation was intentional.

*Behn*, 242 B.R. at 239.[6] The *Behn* court successfully applied issue preclusion[7] principles to the district court's finding that Behn intentionally violated the temporary restraining order, and thus found that Behn "willfully and maliciously" injured Buffalo for purposes of § 523(a)(6) nondischargeability.

The reasoning of the *Behn* court is persuasive. As discussed below, this court finds that application of issue preclusion principles to the Federal Court judgment[8] establishes that Debtor willfully violated the preliminary injunction and, therefore, that Debtor "willfully and

---

[6] *Behn* also states that "when a court of the United States (see 28 U.S.C. § 451) issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order (as is proven either in the bankruptcy court or (so long as there was a full and fair opportunity to litigate the questions of volition and violation) in the issuing court) are *ipso facto* the result of a willful and malicious injury." *Behn*, 242 B.R. at 238.

[7] The United States Supreme Court has adopted the use of the terms "issue preclusion" and "claim preclusion" when discussing the preclusive effect of a judgment. These preclusive effects are collectively referred to as the overarching doctrine of "res judicata." *See Taylor v. Sturgell*, 128 S. Ct. 2161 (2008). "Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Id.* at n. 5 (citing *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 77, n. 1 (1984)).

[8] The Federal Court's judgment encompasses the Contempt Order and Fee Order, which adopt in their entirety the magistrate judge's Contempt Report and Fee Report, respectively.

maliciously" injured Plaintiff for purposes of Code § 523(a)(6) nondischargeability.[9] As such, all facts material to Plaintiff's underlying cause of action were conclusively determined by the Federal Court judgment[10] and establish that Plaintiff is entitled to nondischargeability of its claim under Code § 523(a)(6) as a matter of law.

## ISSUE PRECLUSION

The Federal Court was sitting in diversity when it held Debtor in civil contempt for violation of the preliminary injunction.[11] When the issues to be precluded were rendered by the judgment of a federal court sitting in diversity jurisdiction in Tennessee, federal law requires application of Tennessee issue preclusion doctrine. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (holding that where a decision claimed to have preclusive effect is rendered by a district court sitting in diversity, the preclusion law that would be applied by state courts in the state in which the federal diversity court sits is appropriate to apply). As such, Tennessee issue preclusion doctrine applies.

To successfully apply Tennessee issue preclusion doctrine, six elements must be met: (1) the issue to be precluded is identical to an issue decided in the earlier proceeding, (2) the issue to be precluded was raised, litigated, and decided on the merits in the earlier proceeding, (3) the judgment in the earlier proceeding has become final, (4) the party against whom issue preclusion is asserted was a party or is in privity with a party to the earlier proceeding, (5) the party against

---

[9] "Willful" is defined as "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* 1630 (9th Ed. 2009). Thus, a "willful" violation of a preliminary injunction is also an "intentional" violation of a preliminary injunction.

[10] Debtor's Statement disputes facts only on the basis of his argument that issue preclusion does not apply. Debtor states that because issue preclusion dose not apply, this court cannot adopt the prior court's findings of fact necessary to support Plaintiff's nondischargeability action. However, because we conclude that issue preclusion does apply, Debtor fails to show a genuine dispute as to any fact material to Plaintiff's nondischargeability action.

[11] The power of a district court to hold a party in civil contempt is reliant on the court's valid subject matter jurisdiction in the underlying controversy. *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79 (1988). The prior civil contempt proceedings were brought against defendants for violation of the Tennessee District Court's preliminary injunction. The Tennessee District Court's preliminary injunction was issued in the underlying contract dispute seated in diversity jurisdiction. Thus, the power of the Tennessee District Court to hold Debtor-Defendant in contempt is reliant on diversity jurisdiction.

whom issue preclusion is asserted had a full and fair opportunity to litigate the issue, and (6) resolution of the issue was necessary to support the judgment.[12] *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009).

There are two issues to be precluded here – first, Debtor's violation of the preliminary injunction; and second, Debtor's state of mind in violating the preliminary injunction. Elements one and two of Tennessee issue preclusion are satisfied because it is clear that the identical issues were raised, litigated, and decided in the earlier proceeding. "When an issue is properly raised, by the pleading or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of" issue preclusion. *Id.* at 536 (citing Restatement (Second) of Judgments § 27, comment d). Plaintiff, in its civil contempt pleadings, alleged *intentional* violations of the preliminary injunction as its basis for finding civil contempt. The Contempt Report specifically determined that Debtor *willfully* violated the preliminary injunction. Thus, the issues to be precluded here were raised, litigated, and decided in the earlier proceeding.[13]

Element three of Tennessee issue preclusion is satisfied because it is uncontested that the Federal Court's judgment was final. Although Debtor alleges that he was not a party to the earlier contempt proceeding because Plaintiff's contempt motion did not name him as a

---

[12] The parties argued that federal issue preclusion doctrine applies here. The court notes that federal issue preclusion doctrine and Tennessee issue preclusion doctrine are essentially identical. Federal issue preclusion requires four elements: (1) the identical issue must have been raised in the previous proceeding, (2) the issue must have been actually litigated and decided in the previous proceeding, (3) the opposing party must have had a full and fair opportunity to litigate the issue, and (4) resolution of the issue must have been necessary to support the final judgment of the previous proceeding. *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). However, the additional two elements of Tennessee issue preclusion doctrine (elements three and four) are prerequisite to the application of federal preclusion doctrine.

[13] Debtor's arguments with respect to elements (1) and (2) miss the mark, and conflate these elements with element (6), discussed below. Debtor argues that because findings of "willfulness" and "maliciousness" were unnecessary to hold Debtor in civil contempt, the issues in the instant action are not identical to the issues addressed in the contempt proceedings, and were therefore not litigated in the contempt proceeding. However, as previously stated, "willfulness" and "maliciousness" are not the issues to be precluded here. As such, Debtor's arguments with respect to elements (1) and (2) fail.

11

defendant, element four of Tennessee issue preclusion is satisfied because Debtor participated in the entire two-day contempt hearing, Debtor's interests were aligned with the other contemnors' interests, and the magistrate judge specifically added and noticed Debtor as a party prior to the federal district judge's de novo review of the Fee Report and entry of the Fee Order. Thus, the court focuses its discussion on elements five and six of Tennessee issue preclusion – whether Debtor had a full and fair opportunity to litigate the issues in the prior proceeding and whether resolution of the issues was necessary to support the Federal Court judgment.

### A Full and Fair Opportunity to Litigate

"The 'full and fair opportunity to litigate' requirement rests on considerations of fundamental fairness." *Mullins*, 294 S.W.3d at 538. However, "[t]he courts have not devised a precise definition of what constitutes the sort of 'full and fair opportunity to litigate' that will support the invocation of the doctrine of [issue preclusion]. As a general matter, courts have required that when the party against whom [issue preclusion] is asserted was the defendant in the earlier proceeding, the party must have had notice of the claim and an opportunity to be heard" in compliance with due process. *Id.*; *see also Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982). In the context of § 523(a)(6), another key question in determining whether Debtor had a full and fair opportunity to litigate an issue is whether the debtor had sufficient incentive to defend himself as if a bankruptcy discharge might be at stake. *Behn*, 242 B.R. at 237.

It is unclear from Debtor's response to the pending motion whether he raises a "due process" argument. Debtor couches his "full and fair opportunity" argument in terms of his incentive to litigate. Nevertheless, the court emphasizes that bankruptcy courts, as Article I courts under the United States Constitution, are not courts of appellate jurisdiction. General principles of comity and the orderly administration of justice require this court to respect the

12

judgments of other courts. As such, the court is reluctant to look beyond the findings of fact and conclusions of law made by the Federal Court judgment. With that in mind, the Court nevertheless finds that Debtor received sufficient notice of the contempt claim and had ample opportunity to be heard. The magistrate judge specifically ordered that notice be sent to Debtor. The Fee Report stated that "[o]ut of an abundance of caution the Magistrate Judge had notices of the [contempt] report and recommendation and [the District Judge's] order adopting the [contempt] report and recommendation and the permanent injunction, as well as the motion for attorneys' fees, [] sent to . . . [Debtor]." No objection to the Fee Report was made, and the Fee Report was adopted in its entirety by the Federal Court judgment embodied in the Fee Order. Here, Debtor had actual knowledge of the contempt claim and was present for and participated in the entire two-day contempt hearing. Debtor not only had the opportunity to raise arguments at trial, but could have objected to the reports and recommendations, and appealed the Federal Court orders. Finally, by listing Plaintiff's claim as undisputed in his schedules, Debtor, in effect, acknowledged the fullness and fairness of the Federal Court judgment.

Debtor also had abundant incentive to defend himself in the contempt proceeding as if a bankruptcy discharge might be at stake. Debtor clearly had incentive to defend both himself and the other contemnors from the contempt finding. Debtor has a close familial relationship with the owner of TTYD, his brother, Isam Deb. Debtor's participation in the operation of TTYD went beyond that of a typical employee. Debtor signed the Agreement binding TTYD; Debtor testified that he operated TTYD with respect to "anything that involved the Syracuse market as far as making decisions, order, and so forth;" and Debtor was designated TTYD's "corporate representative" in the contempt proceeding. In the contempt proceeding, Plaintiff presented evidence that Debtor helped create and operate CCW. Debtor admitted he had actual knowledge

of the preliminary injunction, which clearly applied to him as both an "employee" of TTYD and a person acting in concert with TTYD. Furthermore, the Contempt Report found that Debtor, with the other contemnors, "vigorously contested whether they have violated the injunction after their abortive efforts to establish Jabar Jaw as a successor to TTYD." The argument advanced by counsel before the Federal Court that Debtor relied on legal advice in forming Jabar Jaw demonstrates an understanding that a contemnor's state of mind is relevant to the determination of a contempt judgment. The fact that Debtor never raised this argument with respect to the preliminary injunction - at trial, on objection or on appeal - and instead chose to deny that he violated the preliminary injunction does not absolve him.

The incentive to defend oneself in an action as if a bankruptcy discharge might be at stake rests on the foreseeability that a finding in the action would affect one's ability to discharge any resulting obligation to a creditor. *In re Staggs*, 178 B.R. 767, 779 (Bankr. N.D. Ind. 1994). Where the proof needed to establish an element in the action is the same proof needed to establish nondischargeability under § 523, it is clearly foreseeable that a given finding will affect one's ability to discharge a resulting obligation. *Id.* In *Staggs*, a claimant brought a nondischargeability action against the debtor under § 523(a)(6) for a debt arising from a state court battery judgment. The Northern District of Indiana Bankruptcy Court reasoned that because: (1) the proof required to establish battery included proof of willfulness and maliciousness; and (2) this same proof was required to establish willfulness and maliciousness under § 523(a)(6), it was foreseeable that findings of willfulness and maliciousness in the battery judgment would affect debtor's ability to discharge the resulting obligation. The *Staggs* court therefore held that the debtor had sufficient incentive to defend himself in the prior action as if a bankruptcy discharge might be at stake. *Id.*

14

As established by *Behn*, because an intentional violation of a court order evinces an "intent to injure" that is "without just cause or excuse," the proof required to establish an intentional violation of a preliminary injunction in the context of civil contempt is the same proof required to establish "willfulness" and "maliciousness" under § 523(a)(6). Thus, it was foreseeable that a finding by the Federal Court that Debtor "willfully violated the preliminary injunction" would affect Debtor's ability to discharge the resulting fee award to Plaintiff. Debtor had sufficient incentive, therefore, to defend himself in the contempt proceeding as if a bankruptcy discharge might be at stake. As such, Debtor had a full and fair opportunity to litigate both the issues to be precluded here.[14]

## The Necessity of Resolving the Issues

Resolution of the issues to be precluded here was necessary to support the Federal Court judgment. It is undisputed that resolution of whether Debtor violated the preliminary injunction was necessary to the contempt judgment. However, Debtor argues that the Federal Court finding of Debtor's "willful" state of mind was not necessary to hold Debtor in civil contempt. Although Debtor's statement of the law is correct, Debtor's argument does not prevent the successful application of issue preclusion. "While willfulness is not an element of civil contempt, the contemnor's state of mind, such as his good faith or his reliance on the advice of counsel, *is relevant in mitigation of any penalty*." *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985) (emphasis added) (citing *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261-1273 (6th Cir. 1983)). Moreover, for a finding to be *relevant*, it must tend to prove or disprove a fact material to the judgment. *Arlip v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007). Where a finding tends to prove

---

[14] Debtor also argues that he lacked representation at the contempt hearing, and, as a result, did not have a full and fair opportunity to litigate the issues. However, the Contempt Report states in its first footnote that Debtor "was represented by Mr. Maness." Furthermore, as previously stated, Debtor's interests were aligned with the other contemnors' interests and, as such, the issues to be precluded here received full and fair litigation.

15

or disprove a fact material to a judgment, and such finding was made, such finding must have been considered in shaping the judgment, and resolution of such finding must have been necessary to support that judgment.

Here, the Contempt Report specifically found that Debtor "willfully violated the preliminary injunction." The "willfulness" of Debtor's violation was a factual finding of Debtor's state of mind. Because Debtor's "willful" state of mind was relevant to the Federal Court's determination of the appropriate penalty to hold Debtor liable, Debtor's "willful" state of mind must have been considered in shaping the Fee Report and Fee Order. As such, resolution of Debtor's "willful" state of mind was necessary to support the Federal Court judgment embodied in the Fee Report and Fee Order.

The Federal Court judgment was based upon findings of fact established through clear and convincing evidence, which is a higher standard than "a preponderance of the evidence" required to establish nondischargeability under Code § 523(a)(6). Accordingly, because Debtor had a full and fair opportunity to litigate the issues to be precluded here, and because resolution of the issues to be precluded was necessary to support the Federal Court judgment, issue preclusion principles establish by at least a preponderance of the evidence that Debtor willfully violated the preliminary injunction. As such, all facts material to Plaintiff's nondischargeability action were conclusively determined by the Federal Court judgment. Additionally, because a willful violation of a preliminary injunction is a per se willful and malicious injury, Plaintiff is entitled to have its claim declared nondischargeable under § 523(a)(6) as a matter of law.

16

## ATTORNEY FEES

Plaintiff requests an award of nondischargeable attorney fees and expenses incurred in pursuing the instant action. While a bankruptcy court's inherent power to shift attorney fees should be used sparingly and reserved for egregious circumstances, it is appropriate to award fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *In re Scheffer*, 450 B.R. 271, 276 (Bankr. D. Mass. 2011). In *Behn*, creditor Buffalo held a contempt award that included attorney fees. Behn refused to concede the nondischargeability of Buffalo's claim. *Behn*, 242 B.R. at 231. The *Behn* court reasoned that the purpose of the initial contempt award was undermined when Behn forced Buffalo to "hire a lawyer to 're'-prove [the same facts to establish] that the obligation" was nondischargeable. *Id.* at 242. The *Behn* court thus found that it was appropriate to *enhance* the prior court's award of attorney fees to include the fees incurred by Buffalo in pursuing the nondischargeability action. *Id.*

Similarly, Plaintiff holds a pre-petition contempt award that includes attorney fees. Debtor litigated and did not to concede the nondischargeability of Plaintiff's claim in this court. Because the facts required to establish nondischargeability under § 523(a)(6) are the same as the facts already established by the civil contempt proceeding, the purpose of Plaintiff's initial contempt award has been undermined by Plaintiff's need to hire a lawyer to 're'-prove the same facts. Accordingly, this court enhances the Federal Court's award by an additional allowance to cover the reasonable attorney fees and expenses incurred by Plaintiff in pursuing this nondischargeability action. Plaintiff shall file a motion supported by affidavits, time records, and expense records within fourteen days of the issuance of this Order so that the court may determine the extent of this enhancement.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's claim arising from the judgment of the Federal Court is declared nondischargeable under 11 U.S.C. § 523(a)(6). It is further ORDERED that Plaintiff's claim shall be enhanced to cover reasonable attorney fees and expenses incurred by Plaintiff in pursuing this action upon the filing, within fourteen days of the issuance of this Order, of Plaintiff's affidavits, time records, and expense records attesting to such attorney fees and expenses.

So Ordered.

Dated: May 11, 2012
      Syracuse, New York

                                  Hon. Margaret Cangilos-Ruiz
                                  U.S. Bankruptcy Judge